IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRENDA TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-33-F |
| | ) | (WO) |
| PAYLESS SHOE SOURCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. INTRODUCTION**

This cause is before the court on the plaintiffs' Motion to Facilitate Class Notice Pursuant to 29 U.S.C. § 216(b) (Doc. # 17) filed on June 15, 2005. Plaintiff Brenda Tyler ("Tyler") filed a complaint in this Court asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and seeking overtime compensation and benefits. Tyler asks the Court to certify this case as a collective action under the FLSA, and allow nationwide and international notice to all current and former Store Managers and Manager Trainees at Payless ShoeSource, Incorporated ("Payless"). Since the filing of the Complaint, five potential plaintiffs have filed Consents to Become Party Plaintiffs.

For reasons to be discussed, the Court determines that plaintiff's Motion to Facilitate Class Notice is due to be DENIED.

## II. STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION

Section 216(b) of the FLSA provides that:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court"). The power to authorize notice must, however, be exercised with discretion and only in appropriate cases. *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir.1983).

## III. FACTUAL BACKGROUND

Tyler, the potential consent plaintiffs, and the potential collective action members in this case are or have been employed with defendant Payless. Payless operates 4,800 stores in the United States, Guam, Saipan, the United States Virgin Islands, Canada, Central America, the Caribbean, and Japan. According to Payless's Human Resources Director, Tom Tanner, Payless divides its stores into two zones, fifteen regions, and 180 districts. (Def.'s Br. in Opp'n to Pl.'s Mot. to Facilitate Class Notice at 8.)

Tyler was a Payless Store Manager in Montgomery, Alabama, from July 1989 to July 2004. (Decl. of Brenda Tyler at ¶ 3; Complaint at ¶ 3.) Her complaint alleges that she served as an Assistant Manager, a Store Manager Trainee and a Store Manager. All of the people who have filed Consents to Become Party Plaintiffs are or were employed by Payless as Store Managers or possibly Store Manager Trainees ("SMT's")/Managers in Holding. Most of the potential plaintiffs worked in Central Alabama, though Linda Wellman worked at Payless in Southern Alabama and Florida. (Decl. of Linda Wellman at ¶ 3.)

Tyler alleges that Payless violated sections 206 and 207 of the FLSA by classifying Store Managers and Store Manager Trainees as salaried employees exempt from overtime requirements when these employees did not actually perform the type of bona fide executive, administrative or professional positions that would allow Payless to exempt them from overtime. *See* 29 U.S.C. § 213(a)(1). In other words, Tyler alleges that the

Store Managers and Store Manager Trainees should have been non-exempt employees entitled to overtime compensation. (Mot. to Facilitate Class Notice at ¶¶ 3-4.)

Tyler alleges that the Payless managers' primary duty was not a management duty, that they did not customarily and regularly direct the work of two or more other employees, and that they spent most of their time performing non-managerial tasks. (*See* Mot. to Facilitate Class Notice at ¶¶ 3-6.) Tyler alleges in particular that Store Manager Trainees could not have been exempt because Department of Labor Regulations provide that the overtime exemption does not apply to "employees training to become executives and not actually performing the duties of an executive." (Mot. to Facilitate Class Notice at ¶ 10.) Payless agrees with this last point and indicates that the Store Manager Trainees are all classified as non-exempt employees eligible for overtime compensation. (Def.'s Br. in Opp'n at 10.)

Tyler claims that for at least three years prior to filing the complaint in this case, Payless has had a uniform policy and practice of consistently requiring its managerial employees to work more than forty hours per week for a salaried amount without sales incentives, overtime compensation, commission, or other benefits offered to non-exempt employees. She contends that Store Managers and Store Manager Trainees perform the same tasks as hourly employees, often working alone in the stores, and are unable to make decisions regarding how their stores are run.

## IV. DISCUSSION

Tyler requests that this court "1) authorize this case to proceed as a nation-wide collective action, and 2) order the requested identification of the potential opt-ins, and 3) authorize the issuance of a court approved notice to be mailed to all present and former employees of Payless informing them of their rights to participate as opt-in plaintiffs in this action." (Mem. in Supp. of Mot. to Facilitate at 2.) She requests this for all present and former Store Managers and Store Manager Trainees that worked for Payless from a date three years prior to the filing of the complaint to the present.

Collective action treatment under § 216(b) reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *See Hoffmann-La Roche, Inc.*, 493 U.S. at 170. Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of the Defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). The court will address these two issues separately.

**A. Presence of Employees Who Desire to Opt In**

Payless contends that Tyler failed to sufficiently demonstrate that there are other persons who desire to opt-in to this case. Payless offers affidavits from several individuals who would be included in the group identified by Tyler, but do not report that their job duties are inconsistent with FLSA requirements. This Court has denied collective action status when the court found insufficient proof that there were similarly situated persons who desired to join the lawsuit. *See Horne v. United Servs Auto. Ass'n*, 279 F. Supp. 2d 1231 (M.D. Ala. 2003).

Here, while it is unknown what percentage of potential plaintiffs might wish to participate, Tyler points out that five other Payless employees have filed consents to sue pending before this Court, and this is evidence that at least some potential plaintiffs are interested in joining the suit. *See Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1105 n.6 (M.D. Ala. 2003). Though two of these potential plaintiffs were not employed during the relevant period, three other potential plaintiffs remain prepared to join this suit. Given that the Court has evidence that some persons who are Store Managers at Payless expressed a desire to join this suit when they learned about it, the Court concludes that Tyler has sufficiently demonstrated at this stage of the proceedings that other persons desire to join in the suit. The real issue before the Court, therefore, is whether the persons who desire to opt in are similarly situated.

**B. Similarly Situated Store Managers and Store Manager Trainees**

A plaintiff bears the burden of establishing that she and the group she wishes to represent are similarly situated. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). While the meaning of "similarly situated" is not defined in the FLSA, the Eleventh Circuit has held that the "similarly situated" requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) ... [and] that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Hipp*, 252 F.3d at 1219; *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001). Additionally, this Court has previously determined that "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (citing *Marsh v. Butler Co. Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *White v. Osmose*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

In this case, Tyler attempts to meet the similarly situated requirement through affidavits of current and former Payless Store Managers that allege they were required to perform similar duties to Tyler, in a manner that violated the FLSA; additionally, Tyler

indicates that none of the Store Manager Trainees should be classified as exempt as a matter of law.

### 1. *Manager Trainees*

Tyler requests permission to provide notice of this lawsuit to Store Managers and Store Manager Trainees. Tyler was a salaried Payless Store Manager and also a Store Manager Trainee. She does not speak about her time as a Store Manager Trainee specifically, though it is the plaintiff's burden to establish that the Trainees are similarly situated to her.

While the potential plaintiffs are not formal parties to the suit, the court has reviewed their affidavits and preliminarily finds that none of these individuals clearly states that he or she was a salaried Store Manager Trainee.

Moreover, Payless asserts that all of its Store Manager Trainees, as well as its Managers in Holding who are awaiting a store, are classified as non-exempt, and paid overtime if they work more than forty hours per week. In fact, Payless asserts that when potential plaintiff Catrina Witcher was a Store Manager in Holding after her first store closed, she was re-classified as a non-exempt employee and was paid hourly and paid overtime when she worked more than forty hours until she became a full Store Manager again. (Def.'s Br. in Opp'n at 21.)

Since Store Manager Trainees and Store Managers in Holding do not have the same duties or responsibilities as Store Managers, and they are all non-exempt and

eligible for overtime, they are not similarly situated to exempt Store Managers such as Tyler. Tyler has not carried her burden to show that Store Manager Trainees are similarly situated to Tyler. Therefore, it is not appropriate for this Court to order notice to Store Manager Trainees, or allow them to proceed as a part of a collective action with Tyler since they are not similarly situated to Tyler.

### 2. *Store Managers*

Tyler also seeks to notify all current and former Payless Store Managers who worked anytime after the period three years prior to the filing of this complaint in January 2005. She seeks to establish that all store managers are similarly situated by proffering affidavits from three current Store Managers in her district – Catrina Witcher, Evangeline Deramus, and Cynthia W. Harris – as well as two former store managers, Linda Wellman, who worked in Payless stores in Southern Alabama and Florida over fifteen years ago, and Harvey Lee Taylor, who worked at Payless in Alabama from 1991 to 2000.

This collective action motion presents two questions: first, whether the mere classification as a Store Manager is sufficient to establish that the putative collective action members are similarly situated, or whether individuals' job duties must be scrutinized; and second, the degree to which evidence regarding the job duties of Tyler and the other potential plaintiffs and witnesses can be applied to Payless's Store Managers generally.

First, the Court asks whether all Payless Store Managers are similarly situated with

respect to job description, pay plan, and daily job duties. Tyler has presented evidence of the daily job duties of several managers and argued that the case should be certified as a collective action because they have all been improperly classified as exempt. In seeking certification as a collective action, Tyler is not pointing to a Payless job description which says that Store Managers are required to work in stores alone or perform non-managerial duties for more than 50% of their working hours. Instead, Tyler is arguing that as a matter of fact, rather than of formal job description, Payless Store Managers are performing non-managerial duties for the majority of their working hours.

Payless presents evidence that Payless Store Managers experience differences in all three of these categories. First of all, stores differ greatly in size and format, and necessarily offer different job duties; some Store Managers run just one store while others run multiple stores. As a result, it is reasonable to imagine that they have very different job duties. More importantly, not all managers are paid in the same way. Some Store Managers employed by Payless are classified as exempt employees, others are non-exempt, and still others fluctuate quarterly depending on their specific duties for purposes of the FLSA. (See Def.'s Br. in Opp'n at 21.)

The Code of Federal Regulations states that an employee may be exempt as an executive if he or she spends more than 50% of his or her time performing executive tasks, or if less than 50% of the time is spent on executive tasks, but these tasks nevertheless predominate or define the job. 29 C.F.R. § 541.7. The regulations provide a

"short test" to classify employees for purposes of the executive exemption. This test provides that an employee could be classified as an executive if: (1) the employee was paid a salary of more than $455 per week, (2) the employee's primary duty was the management of the enterprise or a subdivision, (3) the employee regularly directed the work of two or more employees, and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. 29 C.F.R. § 541.1(a). To determine whether the primary duty involves management under either standard, in addition to the time spent on managerial tasks, a court can consider (1) the relative importance of managerial tasks and collateral assignments, (2) the frequency with which the employee exercises discretion, (3) the freedom from supervision, and (4) the difference in wages paid to hourly associates versus executives. 29 C.F.R. § 541.7.

The written job description for Store Managers contains many managerial tasks. An examination of Tyler's testimony and that of the other potential plaintiffs, however, reveals allegations that they performed many other, non-managerial tasks and calls into question their classification as exempt. Therefore, the inquiry into whether each of these employees was properly classified requires an examination of the day-to-day tasks they performed.

In a case where a job description alone is not a sufficient indicator of whether other employees are similarly situated, a determination of "which employees are entitled to overtime compensation under the FLSA depends on an individual, fact-specific

11

analysis of each employee's job responsibilities under the relevant statutory exemption criteria." *Holt*, 333 F. Supp. 2d at 1271 (internal quotation omitted).  In the present case, the "similarly situated" inquiry must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt.

In this case, the Court has been presented with evidence in the form of affidavits submitted by both plaintiff and defendant on the issue of whether putative class members are similarly situated. Tyler contends that her evidence reveals that all Store Managers perform the same daily tasks to the same degree. Tyler relies primarily on her own declarations and those of the potential plaintiffs as evidence that Store Managers are similarly situated. This testimony is inconsistent with evidence presented by the defendant.

When the parties have conducted extensive discovery, "it is appropriate to carefully consider the submissions of the parties with respect to the collective action allegations." *Holt*, 333 F. Supp. 2d at 1274 (citing *White*, 204 F. Supp. 2d at 1313). *See also Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (applying a stricter standard where discovery had been conducted); *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995).[1]

---

[1]The court recognizes that the defendant has filed several Motions to Strike certain portions of plaintiff's evidentiary materials offered in support of her Motion to Facilitate Class Notice (Docs. # 21, 22, 23, 24). Because the Court does not rely on this evidence in reaching its ultimate conclusion as to the plaintiff's motion, the Court finds it is not necessary to reach the

The rationale for considering evidence at this stage in the proceedings was explained by the Court in *Holt*:

> The court emphasizes that it is not weighing evidence, or accepting the substance of the Declarations submitted by the Defendant over the substance of any testimony submitted by the Plaintiffs. Because the issues in this case revolve around whether the day-to-day tasks of Store Managers and Assistant Managers are consistent with their designation as exempt, this court must necessarily examine evidence of the job duties actually performed by all of the Store Managers and Assistant Managers. The court concludes in this case, therefore, that rather than rely merely on the evidence presented by the Plaintiffs, it is appropriate to examine all of the relevant evidence.

*Holt*, 333 F. Supp. 2d at 1274.

Payless presents declarations from Payless Store Managers and employees who have worked for Tyler and some of the other potential plaintiffs. Their affidavits are consistent with other declarations presented by the defendant, and inconsistent with the evidence submitted by the Tyler.

Significantly, the affidavits show that not all Store Managers are exempt. Some are non-exempt and are paid overtime for hours worked exceeding 40 per week. Even among the exempt Store Managers, they are paid differently based upon the location of the stores, the size of the stores, market conditions, state laws, and their specific duties. Managers in Holding or Flux Managers, who supervise, on average, less than two employees in a given quarter, are paid as non-exempt employees. There are also several

---

merits of these Motions to Strike; therefore, they are due to be DENIED as MOOT.

other types of Store Managers who have special duties, including managing multiple stores, serving as market leader managers who work with district-wide initiatives, or supervisory managers. (*See generally* Affs. of Brenda Knox, Clarence Alexander, Bridget Strother, Patrice Davis, Doug Moore, and Dana Nelson.)

While Tyler and the other potential plaintiffs have declared that at least 80% of their time is spent doing the same type of work performed by hourly employees, Payless offers evidence that other managers in the district where Tyler worked believed that over 80% of their time was spent engaged in managerial duties. Tyler alleges that she had little or no discretion as to how her store was run, but other Payless managers contend that they had the ability to hire and fire employees, set pay rates, and were responsible for all aspects of supervising store employees. For instance, Brenda Knox, Store Manager of Payless stores in Birmingham and Hoover, Alabama, estimates that 90-95% of her time is spent performing management duties, and that her most important duty as manager is training other employees. (Aff. of Brenda Knox at ¶ 9.) When Store Managers did not supervise two or more employees, Payless reclassified their job duties on a quarterly basis as required by the FLSA. (Def.'s Br. in Opp'n at 11.) Payless employees have acknowledged this classification system in their affidavits. *(See, e.g.,* Aff. of Brenda Knox at ¶ 13.)

The parties in this case have presented sufficient evidence at this stage to demonstrate that a determination as to whether or not other potential plaintiffs are

14

similarly situated would require a fact-specific, case-by-case inquiry by the Court. In order to make this determination, at the very least, the Court would have to inquire as to each employee's average daily job duties, the number of other employees supervised, and the classification of each employee as exempt or non-exempt for the time period in question. This is the minimum level of inquiry; for some employees, the inquiry might need to go further, looking at that employee's ability to hire and fire subordinates, the employee's ability to set pay rates, and the amount of time that employee spends training and supervising other employees.

Without making credibility determinations, but merely considering all of the evidence presented at this stage, the Court cannot conclude that all Store Managers employed by Payless, even within the region that includes Alabama, are similarly situated. The plaintiff has thus failed to meet the standard requirements necessary for this Court to certify a collective action in this case.

## V. CONCLUSION

Because the evidence shows that certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency, the Court will decline to facilitate the class notice necessary for a collective action to proceed under the FLSA. "The court recognizes that the FLSA has a broad remedial purpose, but, as the *Brooks* court noted, 'courts, as well as practicing attorneys, have a responsibility to avoid the

"stirring up" of litigation through unwarranted solicitation.'" *Holt*, 333 F. Supp. 2d at 1275 (citations omitted). Accordingly, it is hereby ORDERED that:

(1) The Plaintiff's Motion to Facilitate Class Notice (Doc. # 17) is DENIED.

(2) The Defendant's Motions to Strike (Docs. # 21, 22, 23, 24) are DENIED as MOOT.

DONE this the 22nd day of November, 2005.

                                            /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE